IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                  :        CASE NO. 04-07370 (ESL)
                                        :
HECTOR JUAN FIGUEROA VINCENTY,          :        CHAPTER 11
                                        :
        Debtor                          :
_____:

## OPINION AND ORDER

This case is before the court upon the court's order of June 15, 2005, to the debtor to show cause why the case should not be converted to one under chapter 7 of the Bankruptcy Code. Fox Sports Latin America Ltd. ("Fox") has renewed its request that the case be dismissed.

## Background

Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code on July 13, 2004. According to debtor, his bankruptcy filing was precipitated by the dismissal of the bankruptcy case of his corporation, Sport International Inc., case no. 03-09956, on June 15, 2005, based upon this court's finding that Sport International Inc. is not a duly organized corporation under the laws of the Commonwealth of Puerto Rico.[1]

Fox filed a motion requesting dismissal of this case on October 26, 2004, and renewed their request for dismissal on December 20, 2004. On January 4, 2005, the court entered an order directing the debtor to show cause within twenty days why the case should not be dismissed for bad faith filing and lack of a reasonable likelihood of rehabilitation. Debtor filed an answer to the motion(s) to dismiss on January 25, 2006,

_____

[1]Sport International Inc. filed a voluntary petition under chapter 11 of the Bankruptcy Code on September 11, 2003.

and corrections thereto on January 26, 2006.

Debtor's attorney filed a motion resigning legal representation on January 31, 2005. An application to employ new attorneys was filed on March 2, 2005, and an order approving said application was entered on April 11, 2005.

Fox filed a motion requesting that their motion to dismiss be granted on May 5, 2005, and the court scheduled a hearing for June 15, 2005. At the conclusion of the hearing, the court entered an order finding that the petition was not filed in bad faith. However, in light of the following findings: (1) the debtor had sold substantially all of his properties and used the proceeds to fund his operations, with a balance of approximately $20,000.00; (2) the only remaining real property, debtor's residence, is over-encumbered; (3) debtor's only assets are his art collection and potential cause of action against Fox; (4) debtor's testimony as to future contracts was speculative; and (5) debtor's monthly operating reports do not reveal income; the court concluded that there is ongoing diminution of the estate and no reasonable likelihood of rehabilitation. Accordingly, the court ordered the debtor to show cause within twenty days why the case should not be converted to chapter 7.

Debtor argues in his motion to stay conversion that the case should not be converted because: (1) he is committed to paying all of his bona fide debts through chapter 11 reorganization; (2) he is opposed to liquidation under chapter 7; (3) he is involved in several projects that will result in his earning enough income to pay all of his bona fide debts; and (4) he is confident that the district court will reverse this court's finding that his business is not a corporation under the laws of Puerto Rico, resulting in

2

AO 72
(Rev. 8/82)

the reinstatement of Sport International Inc.'s bankruptcy petition and the return of $400,000 to the estate of Sport International Inc., which will then benefit the creditors of the estates of both Sport International Inc. and debtor, without the need to liquidate either one.

Fox argues that the status of the appeal in the Sport International, Inc. case is irrelevant to debtor's bankruptcy case and will have no impact on the trust funds released to Fox in the California case because they result from the California court's determination that debtor is personally liable to Fox for his breach of the license agreement for the 2002 *Copa Libertadores* soccer tournament.

## Discussion

Section 1112 of the Bankruptcy Code provides that upon request of a party in interest, and after notice and a hearing, the court may convert a case under chapter 11 to a case under chapter 7, or dismiss the case, whichever is in the best interest of the creditors and the estate, for cause, including "continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation". 11 U.S.C. § 1112(b)(1).[2] The decision as to whether to convert a case from chapter 11 to chapter 7 is one which is firmly within the court's discretion. 7 Lawrence P. King, et al., Collier on Bankruptcy ¶ 1112.04 (15th ed. rev'd 2005); In re Consolidated Pioneer Mortgage Entities, 248 B.R. 368 (9th Cir. BAP 2000). "In order to avoid the costs of chapter 11 in cases in which they

---

[2]Section 1112(b) was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, 119 Stat. 23 § 442 (Apr. 20, 2005), effective for all cases filed on or after October 27, 2005; hence, the amended provisions to not apply herein.

3

AO 72
(Rev. 8/82)

are not justified, section 1112(b) was designed to provide the court with a powerful tool to weed out inappropriate chapter 11 cases at the earliest possible stage." Collier, ¶ 1112.04[2] at 1112-23.

In determining whether a case is "appropriate" for chapter 11 or not, the court must first examine the concept of "cause", then examine the limits of its discretion to refrain from converting or dismissing a case even if cause exists. As to the former, Collier notes "each of the general categories of cause enumerated in the statute involves a situation in which it is typically unlikely that the benefits of reorganization will be achieved within a reasonable amount of time or at an acceptable cost"; in other words, the circumstances in which it is unreasonable for the chapter 11 case to proceed. ¶ 1112.04[3] at 1112-24. As to the latter, the commentator observes "the court may exercise its discretion and deny relief if mitigating factors demonstrate that, notwithstanding the presence of cause, it remains likely that the benefits of reorganization will be achieved at an acceptable cost consistent with the requirements and limitations of the Code." Id. at 1112-25. Thus, in cases where there is a continuing loss to, or diminution of, the chapter 11 estate, and an absence of a reasonable likelihood of rehabilitation of the chapter 11 debtor, it is appropriate to convert the case to chapter 7 or dismiss it, because it is unlikely that the debtor's reorganization will be achieved in a reasonable amount of time or at a reasonable cost, unless the court finds that there are mitigating circumstances which show that reorganization can be achieved within acceptable parameters.

The standard set forth in § 1112(b)(1) has two basic requirements: first, whether the debtor has a negative cash flow or declining asset values, and second, whether there is

4

AO 72
(Rev. 8/82)

a reasonable likelihood that the debtor's losses can be stemmed and the business placed back on a solid financial footing within a reasonable amount of time. An examination of debtor's operating reports yields the following information:

| Date | Cash on Hand | Income | Disbursements | Profit/Loss |
|---|---|---|---|---|
| 07/04[3] | $12,073.78 | $2,511.53[4] | $11,100.87 | $3,484.44 |
| 08/04[5] | $3,484.44 | $9,366.35[6] | $7,676.15 | $5,174.64 |
| 09/04 | $100.00 | $4,920.00[7] | $1,659.40 | $3,360.60 |
| 10/04[8] | | | | |
| 11/04 | $24,239.23 | $0 | $8,055.03 | $16,184.20 |
| 12/04 | $16,190.69 | $10,000.00[9] | $5,947.00 | $20,243.69 |
| 01/05 | $20,243.69 | $30,386.94[10] | $13,930.14 | $36,700.49 |
| 02/05 | $12,813.65 | $112,933.58[11] | $16,406.91 | $109,340.32 |

---

[3]Debtor filed two operating reports, dkts. #13 and 50. The first listed cash on hand of $1,844.68, no income, and disbursements of $7,581.76, for a loss of $5,737.08. The text of this opinion includes the figures from the second operating report filed.

[4]Income from salary and commissions.

[5]Debtor filed two operating reports for this period, dkts. #34 and 51. The first listed cash on hand of $100.00, income of $2,500, disbursements of $6,685.16, and a loss of $4,085.16. The text of this opinion includes the figures from the second operating report.

[6]Income from salary and commissions.

[7]Debtor notes this income is from loans from his wife's brother, sister and credit card.

[8]No operating report was filed for this period.

[9]Income received as deposit from sales contract for condominium in Hato Rey.

[10]Part of income, $6,500.00, from the sale of artwork and $23,886.94 from the sale of the condominium in Hato Rey.

[11]Debtor filed two different operating reports for this period. Income includes $23,886.94 from the sale of condominium in Hato Rey, $87,746.64 from the sale of property on Calle Sol, and $1,300.00 in casino winnings.

5

| 03/05 | $108,040.37 | $800.00[12] | $38,840.85 | $69.999.52 |
| 04/05 | $70,978.15 | $325.00[13] | $51,941.88 | $19,361.27 |
| 05/05 | $19,361.27 | $398,500.00[14] | $11,885.67 | $405,975.60 |
| 06/05 | $405,975.60 | $1,819.58[15] | $404,806.38 | $2,988.80 |

No operating reports have been filed since June, 2005.  The reports which have been filed demonstrate a consistent  negative cash flow since the inception of this case.  The debtor's only income since September, 2004 has been loans, refunds, casino winnings, and proceeds from the sale of art and real property.  Further, as the court recognized at the hearing on June 15, 2005, the value of debtor's assets has declined since the commencement of the case as all unencumbered property has been sold.  Accordingly, the court finds that the facts of this case establish a continuing loss to, and diminution of, the debtor's estate.

However, the court must consider whether there is any reasonable prospect for reversing the debtor's losses and revitalizing the debtor as a viable business enterprise.  In his response to the order to show cause, debtor's only argument is that if the California district court returns the $400,000.00 in trust funds it ordered distributed to Fox to be returned to Sport International, the creditors will be benefitted and the estate(s) will not have to be liquidated.  Setting aside the possibility of that turn of events, even if it were to happen, the same does not establish that debtor's business can be successfully

---

[12]Income from casino winnings.

[13]Source of income not included in operating report.

[14]Income includes $500.00 loan reimbursement and $398,500.00 from what turned out to be a forged check.

[15]Income from health insurance refund.

6

rehabilitated. The standard is whether the debtor's business prospects justify continuance of the reorganization effort. Collier, ¶ 1112.04[5][a][ii]. The court must determine whether the causes of the debtor's continuing losses can be corrected and whether the debtor is capable of remedying the problem - which, in most cases, depends on whether the debtor has formulated a reasonably detailed business plan, or can do so within a reasonable amount of time. Id. The debtor's opportunity to reorganize should be balanced against the protection of the creditors and the needs of the chapter 11 system as a whole. Id. "However honest in its efforts the debtor may be, and however sincere its motives, the District Court is not bound to clog its docket with visionary or impractical schemes for resuscitation." Id., citing Tennessee Publishing Co. v. American Nat'l Bank, 299 U.S. 18, 22, 57 S. Ct. 85, 81 L. Ed. 13 (1930).

The court does not doubt that debtor is committed to repaying his bona fide creditors; it has already found that the petition was not filed in bad faith. Nor does the court doubt that the debtor opposes conversion. However, the debtor has not established that he has the means to rehabilitate his business nor a plan for doing so. He has not presented to this court that his business prospects justify the continuance of his chapter 11 case. There is no indication that any potential benefits of reorganizing debtor's business affairs under chapter 11 will be achieved within a reasonable amount of time or at an acceptable cost to the creditors and the bankruptcy system.

AO 72
(Rev. 8/82)

## Conclusion

The court finds that it is in the best interest of the estate and the creditors to convert this proceeding to one under chapter 7 of the Bankruptcy Code.

SO ORDERED.

In San Juan, Puerto Rico, this 20th day of January, 2006.

ENRIQUE S. LAMOUTTE
United States Bankruptcy Judge

AO 72
(Rev. 8/82)